UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.L., by and through his guardian ad litem Stephen J. Greene,<br><br>         Plaintiff,<br><br>    v.<br><br>MELANIE CATANIO, an individual, and CITY OF FOLSOM, a public entity,<br><br>         Defendants. | No. 2:22-cv-01686-JAM-JDP<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

    Minor G.L. ("Plaintiff"), by and through his guardian ad litem, Stephen J. Greene, sues Police Officer Melanie Catanio and the City of Folsom (collectively "Defendants") for various constitutional violations under 42 U.S.C. § 1983. Defendants move to dismiss Plaintiff's Second Amended Complaint ("SAC"). See Mot. to Dismiss ("Mot."), ECF No. 41; SAC, ECF No. 39. Plaintiff opposes the motion. See Opp'n, ECF No. 43. Defendants replied. See Reply, ECF No. 44. For the reasons set forth

///

below, the Court GRANTS Defendants' motion to dismiss.[1]

## I. BACKGROUND

Plaintiff G.L. brings this suit against Defendants for alleged wrongful acts taken in the course of investigating Plaintiff's mother for sexual child abuse. SAC ¶ 1. Plaintiff is the fourth of five children, with three older brothers and one younger sister. Id. ¶ 6. Plaintiff's mother, Patricia Lane, was convicted of four counts of Penal Code § 288(a) for sexually abusing her three older sons, Plaintiff's brothers, and her brother, Plaintiff's uncle. Id. ¶ 3; Mot. at 1. Plaintiff's mother was also charged with sexually abusing Plaintiff, but she was ultimately acquitted of those charges. Mot. at 1.

Plaintiff alleges that Defendant Officer Catanio unlawfully seized him when she interviewed him without the knowledge or consent of his parents at his school on December 4, 2018. SAC ¶ 12. Plaintiff alleges Defendant Officer Catanio unlawfully seized him again when she interviewed him at the Child Protective Services ("CPS") SAFE Center on June 28, 2019. Id. ¶ 17.

Plaintiff further alleges that Defendant Officer Catanio intentionally suppressed exonerating evidence from the first interview and misrepresented its contents to the Sacramento Superior Court in order to obtain a No-Contact Order from the court, separating Plaintiff from his mother for a period of two years. Id. ¶¶ 41-42. Defendant Officer Catanio allegedly "intentionally destroyed" the recording of Plaintiff's first

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 14, 2023.

2

1  interview.  Id. ¶¶ 12-14.  Defendant Officer Catanio also
2  allegedly fabricated a story about G.L.'s older brother
3  "reported[ly] seeing their mother digitally penetrate G.L.'s
4  rectum."  Id. ¶ 43.  Plaintiff further alleges Defendant City of
5  Folsom knew or had reason to know of Officer Catanio's wrongful
6  behavior and failed to correct it.  Id. ¶¶ 100-103. Based upon
7  these allegations, Plaintiff asserts Defendants violated his
8  constitutional rights under the Fourth and Fourteenth Amendments
9  and so pray for damages and injunctive relief against them.  See
10 SAC.

                            II.   OPINION

   A.   Legal Standard

   Federal Rule of Civil Procedure 8(a)(2) requires "a short
and plain statement of the claim showing that the pleader is
entitled to relief."  When a plaintiff fails to "state a claim
upon which relief can be granted," the Court must dismiss the
suit.  Fed. R. Civ. P. 12(b)(6).  To defeat a motion to dismiss,
a plaintiff must "plead enough facts to state a claim to relief
that is plausible on its face."  Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 570 (2007).  Plausibility under Twombly requires
"factual content that allows the Court to draw a reasonable
inference that the defendant is liable for the misconduct
alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "At
this stage, the Court 'must accept as true all of the
allegations contained in a complaint.'"  Id.  But it need not
"accept as true a legal conclusion couched as a factual
allegation."  Id.
///

3

B.  Discussion

    1.  Claim One: Wrongful Seizure under the Fourth Amendment at School

Defendant Catanio asserts she is entitled to qualified immunity for the "one hour in-school interview" with Plaintiff, which Plaintiff claims was an unlawful seizure under the Fourth Amendment. Mot. at 7. The Court agrees with Defendant.

Qualified immunity protects government officials from liability for money damages unless their conduct violates "clearly established" law that a reasonable public official would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009). The inquiry for the Court is two-fold. Saucier v. Katz, 533 U.S. 194, 200 (2001). First, the Court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, constitute a violation of a constitutional right. Id. Second, the Court must determine whether the constitutional right was clearly established at the time of the alleged violation. Id. Answering either prong in the negative means the government official(s) are entitled qualified immunity. Id. at 201.

A court may address the second prong of the qualified immunity test first if it is clearly dispositive and if doing so would resolve the case efficiently. Pearson, 555 U.S. at 242. A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 744 (2002). "[W]hether the violative nature of particular conduct is clearly established" is a question be answered "not as a broad general proposition," but

with reference to the facts of specific cases. Mullenix v. Luna, 577 U.S. 7, 12 (2015). Except in the most obvious of cases, a plaintiff seeking to overcome an assertion of qualified immunity "must identify a case that puts [the defendant] on notice that his specific conduct was unlawful." Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 8 (2021) (per curiam).

Here, Plaintiff only discusses one case as precedent: Camreta v. Greene, 588 F.3d 1011, 1015 (9th Cir. 2009). Despite Plaintiff's contentions, Camreta does not stand for the proposition that Plaintiff's right against being interviewed without consent was clearly established in the Ninth Circuit in 2018, because the case was vacated in 2011 by the Supreme Court. Further, the Supreme Court vacatur of the Ninth Circuit holding "strip[ped] the decision below of its binding effect." 563 U.S. 692, 713 (2011). On remand, the Ninth Circuit then also vacated the portion of its opinion on the Fourth Amendment issue consistent with the Supreme Court's instructions. 661 F.3d 1201, 1201-02 (9th Cir. 2011). Because both vacaturs happened before the alleged seizure at school in 2018, Camreta cannot serve as precedent clearly establishing that a warrantless interview violates Plaintiff's right against illegal seizures.

Undeterred, Plaintiff argues that "[n]otwithstanding the Supreme Court's vacatur of the Fourth Amendment portion of the Ninth Circuit decision in Greene, Catanio violated G.L.'s clearly established constitutional right to be free from prolonged warrantless interviews in the absence of parental consent, exigent circumstances, or probable cause." Opp'n at 6. Plaintiff, however, fails to support this argument with any

5

binding or persuasive authority. Once Defendant has invoked the protective mantle of qualified immunity, it is Plaintiff's burden to cast it aside by showing the infringed upon constitutional right was clearly established. Rivas-Villegas v. Cortesluna, 142 S. Ct. at 8. Plaintiff, relying solely on Camreta, has failed to do so. For this reason, the Court finds Plaintiff has not met the second prong of the qualified immunity analysis and Defendant Catanio is entitled to qualified immunity on Plaintiff's first claim. Further, the Court finds amendment will be futile and dismisses Plaintiff's first claim with prejudice. Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1049 (9th Cir. 2006).

    2.   Claim Two: Wrongful Seizure under the Fourth Amendment at Child Protective Services

Plaintiff's second claim is functionally the same as his first claim, only with reference to a different instance of seizure at the CPS SAFE Center in 2019. Therefore, for the same reasons articulated above, Defendant Catanio is entitled to qualified immunity on Plaintiff's second claim. Accordingly, the Court dismisses Plaintiff's second claim with prejudice. Deveraturda, 454 F.3d at 1049.

    3.   Claim Three: Interference with Familial Association under the Fourteenth Amendment

Plaintiff next asserts a claim for interference with familial association on the ground that "Catanio's seizure of G.L. [and] ensuing fabrications about G.L. [resulted in a two year] No-contact Order during his formative years." Opp'n at 6. Plaintiff alleges this No-Contact Order had a "devastating impact" upon Plaintiff's relationship with his mother, which

effectively terminated the parent-child relationship. Id. Since the No-Contact Order expired on October 18, 2021, Plaintiff has reestablished contact with his mother, albeit only through "security glass or by telephone/video" due to his mother's incarceration. SAC ¶¶ 42,62.

While the Court must take Plaintiff's allegations as true for the purposes of a motion to dismiss, the Court finds little authority to support Plaintiff's contention that an interview at CPS or a No-Contact Order qualifies as governmental interference with Plaintiff's constitutional right to familial association. First, as to the alleged seizure, courts have stated that claims by children who are seized are assessed under the Fourth Amendment right to be free from unreasonable seizures and not the Fourteenth Amendment. Keates v. Koile, 883 F.3d 1228, 1236 (9th Cir. 2018). Plaintiff's alleged seizure at CPS therefore does not support his familial association claim.

Second, as to the No-Contact Order, the Ninth Circuit "only consider[s a parent-child relationship] impaired in situations such as the death of a child, the loss of parental rights, or the loss of contact or custody with the child." E.H. v. Brentwood Union Sch. Dist., 2013 WL 5978008, at *2 (N.D. Cal. 2013) (citing Kelson v. City of Springfield, 767 F.2d 651, 654-55 (9th Cir. 1985). Such examples demonstrate that the Constitution "do[es] not provide constitutional protections from any state action that has the ultimate effect of disturbing the tranquility of the parent-child relationship." Harry A. v. Duncan, 351 F.Supp.2d 1060, 1068 (D. Mont. 2005), affirmed at 234 Fed. Appx. 463 (9th Cir. 2007). Although Plaintiff temporarily lost contact with his

1  mother, there is no authority before the Court to suggest a
2  temporary period of no-contact constitutes governmental
3  interference "so intrusive as to be the equivalent of termination
4  of [the parent-child relationship.]" Harry A., 351 F.Supp.2d at
5  1068. As Defendant points out, "Plaintiff does not [otherwise]
6  allege any loss of parental right or physical custody." Mot. at
7  10. Accordingly, finding insufficient factual allegations to
8  state a familial association claim under the Fourteenth
9  Amendment, the Court dismisses Plaintiff's third claim. As
10 amendment would be futile, the Court dismisses the claim with
11 prejudice. Deveraturda, 454 F.3d at 1049.

       4.   Claim Four: Equal Protection under the Fourteenth Amendment

14     To state a claim for equal protection, a plaintiff must
15 allege either that a defendant intentionally discriminated
16 against the plaintiff based on his membership in a protected
17 class or that similarly situated individuals were intentionally
18 treated differently without a rational relationship to a
19 legitimate state purpose. Lee v. City of Los Angeles, 250 F.3d
20 668, 686-87 (9th Cir. 2001).

21     Plaintiff asserts he suffered discrimination on the basis of
22 his gender, because he was treated differently from his sister, a
23 similarly situated individual, without any rational basis. SAC
24 ¶ 83. As Defendant Catanio argues, "Plaintiff's sister was not
25 'similarly situated' . . .[Given that] Plaintiff's mother was
26 suspected of molesting several male siblings/family members, it
27 is of no import [that] a female child was not given the same
28 treatment absent any allegations his sister was a victim of

8

sexual abuse as well." Mot. at 11 (emphasis added). Plaintiff has not alleged that his sister was molested or that she should have been a more integral part of the investigation against his mother. Under the facts alleged, Plaintiff and his sister were not similarly situated.

Thus, Plaintiff has failed to state a claim for violation of his rights under the Equal Protection clause. The Court further finds amendment of this claim would be futile. Accordingly, the Court dismisses this claim with prejudice. Deveraturda, 454 F.3d at 1049.

### 5. Claim Five: Judicial Deception

Plaintiff has the due process right to be free from deliberately false statements during a court proceeding. To state a claim for judicial deception, Plaintiff must allege that the defendant officer (1) deliberately fabricated evidence and (2) the deliberate fabrication of evidence caused Plaintiff's deprivation of liberty. Keates, 883 F.3d at 1240. A state officer who "submit[s] an affidavit that contain[s] statements he knew to be false or would have known were false had he not recklessly disregarded the truth . . . cannot be said to have acted in a reasonable manner, and the shield of qualified immunity is lost." Chism v. Washington, 661 F.3d 380, 393 (9th Cir. 2011)(quoting Branch v. Tunnell, 937 F.2d 1382, 1387 (9th Cir. 1991)).

Defendant Catanio argues this claim fails because Plaintiff has failed to identify any constitutional injury to himself as a result of judicial deception. Mot. at 12. The Court agrees.

Plaintiff lists a number of alleged harms he suffered as a

9

result of Defendant Catanio's misrepresentations, but only two warrant discussion:  First, Plaintiff alleges that but for Defendant Catanio's misrepresentations to the state court, Plaintiff would not have been "illegally seized without a warrant at the School Interview and the CPS SAFE Center Interview."  SAC ¶ 93.  However, the very fact that Defendant Catanio did not have a warrant proves there is no causation between her misrepresentations and Plaintiff's seizures.  A claim for judicial deception requires Plaintiff to show that the deception was the but-for and proximate cause of a judicial action.  Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017).  If Defendant Catanio seized Plaintiff without a warrant, then Defendant acted without the court and, therefore, there is no judicial action to be challenged.  For this reason, Plaintiff's alleged seizures cannot be the basis of his claim for judicial deception.

Plaintiff next alleges that but for Defendant Catanio's misrepresentation to the state court, the court would not have issued a No-Contact Order, which Plaintiff contends violated his right to familial association.  However, as discussed above, there is no authority to support Plaintiff's theory that a No-Contact Order gives rise to a familial association claim.  For that reason, the No-Contact Order also cannot support Plaintiff's claim for judicial deception.

The Court declines to address Plaintiff's remaining list of alleged harms except to say they are unsupported by caselaw as cognizable harms for a judicial deception claim.  Plaintiff has failed to demonstrate the legal import of the fact that he was

raised by his father while his mother was in custody or that he was called to answer questions at trial. SAC ¶ 93.

Based on the forgoing, the Court finds that Plaintiff has failed to allege facts sufficient to state a claim for judicial deception. The Court also deems amendment to be futile. Accordingly, the Court dismisses this claim with prejudice. Deveraturda, 454 F.3d at 1049.

### 6. Claim Six: Monell Claim

Defendant City of Folsom moves to dismiss Plaintiff's Monell claim for failure to allege sufficient facts to state a claim under Rule 12(b)(6). Under Monell, municipalities can be sued directly under 42 U.S.C. § 1983 for an unconstitutional custom, policy, or practice. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). To establish municipal liability, "a plaintiff must show (1) he possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation." Sweiha v. Cty. of Alameda, No. 19-CV-03098-LB, 2019 WL 48482227 at *3 (N.D. Cal. Oct. 1, 2019) (citing Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997)).

As discussed above, Plaintiff has failed to state a claim for any constitutional violation and therefore fails to satisfy the first requirement for a derivative Monell claim. See Yagman v. Garcetti, 852 F.3d. 859, 867 (9th Cir. 2017)(dismissing derivative Monell claims "premised on a violation of [Plaintiff's] constitutional rights."). Further, even if

Plaintiff were to state a sufficient claim for any constitutional violation, Plaintiff would not prevail on the remaining elements. Plaintiff's allegation that Defendant City has a widespread policy of inaction that amounts to "a well-settled practice of ignoring the Fourth Amendment during abuse/assault investigations" is unsupported by any reference to comparable instances of similar behavior.

Plaintiff contends there are other instances demonstrating Defendant City of Folsom's unconstitutional policies, but Plaintiff's examples are unavailing. For instance, Plaintiff seeks to rely on facts from O'Neel et al v. City of Folsom et al., Case No. 2:21-cv-02403-WBS-DB, but the cases are fundamentally different. In O'Neel, a child was physically removed from the custody of his parents—no such removal occurred in this case. Likewise, Plaintiff misplaces his reliance on a Superior Court Order from People v. Gregory Harms, attached as Exhibit 5 to Plaintiff's SAC. The attached Order concerns a motion to suppress evidence found from a cell phone seizure and has no bearing here, where the alleged violative conduct is a warrantless interview with a child.

As such, Plaintiff has failed to allege sufficient facts showing there is an unconstitutional custom or practice at the City of Folsom with respect to seizing children. Accordingly, finding amendment to be futile, Plaintiff's Monell claim is dismissed with prejudice. Deveraturda, 454 F.3d at 1049.

    7.    Prayer for Injunctive Relief under § 1983

A plaintiff must have standing to pursue injunctive relief under § 1983. See Los Angeles v. Lyons, 461 U.S. 95, 105 (1983).

As the party invoking federal jurisdiction, Plaintiff bears the burden of alleging specific facts sufficient to establish standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Plaintiff "must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 185 (2000).  To assert standing for injunctive relief, Plaintiff must allege he is likely to suffer future injury from Defendants' alleged misconduct. Los Angeles, 461 U.S. at 105.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief [when] unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-496 (1974).

Defendants argue that "Plaintiff here does not state facts establishing a likelihood of any irreparable injury in the future to justify any form of injunctive relief, nor any likelihood of prospective harms being committed against him."  Mot. at 14.  The Court agrees.  Although Plaintiff alleges "G.L. lives in constant fear of being snatched away from the only parent who is still caring for him," Plaintiff has not shown how his subjective apprehension is grounded in reality.  SAC ¶ 67. Stated another way, Plaintiff has not alleged facts demonstrating a reasonable likelihood that the alleged unlawful conduct will recur. Plaintiff alludes to "a plan devised long ago by G.L.'s older brothers to utilize government power—namely the Folsom Police—to forcibly seize G.L. from their parents," but the only allegation supporting the existence of this "plan" is Plaintiff's brother's statement that he has had "government help" in seeking to find a

safe environment for his siblings. SAC ¶ 63. This allegation alone does not establish a reasonable likelihood that Plaintiff will be seized gain, especially since Plaintiff's mother's criminal trial and related investigation have ended.

While Plaintiff's opposition brief asserts Plaintiff has standing to bring each of his claims, Plaintiff's arguments are unresponsive to Defendants' contention that Plaintiff has failed to show a reasonable likelihood of future harm. In the Court's view, Plaintiff thereby concedes the issue. See Resnick, No. CV 16-00593-BRO (PJWx), 2017 WL 1531192, at *22, (C.D. Cal. Apr. 13, 2017). Accordingly, the Court finds Plaintiff has failed to establish standing. The Court thus strikes Plaintiff's prayer for injunctive relief without leave to amend. Having dismissed all of Plaintiff's claims, the Court need not and will not address the remaining arguments in the parties' briefs.[2]

III. ORDER

For the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss with prejudice. The Clerk is DIRECTED to close the case.

IT IS SO ORDERED.

Dated: April 24, 2023

JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Defendants' collateral attack arguments were particularly compelling, and the Court agrees it is inappropriate for Plaintiff to make allegations about misconduct that occurred during the underlying criminal trial.

14